HUMBERTO HINOJASA, Plaintiff-Appellee, *v.* AUTOMATIC ELEVATOR COMPANY, Defendant-Appellant.

First District (4th Division)   No. 79-2209

Opinion filed December 31, 1980.

John G. Poust, of Rooks, Pitts, Fullagar & Poust, of Chicago, for appellant.

Norman Small, of Chicago (Sidney Z. Karasik, of counsel), for appellee.

Mr. JUSTICE JIGANTI delivered the opinion of the court:

The plaintiff, Humberto Hinojasa, was injured in February 1972 when the overhead door of a freight elevator fell upon him at his place of employment. He filed a two-count complaint in the circuit court of Cook County against the defendant, Automatic Elevator Company (Automatic). Hinojasa voluntarily dismissed the negligence count prior to trial. The trial proceeded solely on the theory of strict liability in tort. The jury returned a verdict in the plaintiff's favor on which judgment was entered. The defendant appeals from that judgment.

The dispositive issue in this case concerns the legal responsibility of Automatic in its role in the installation of the elevator. Hinojasa argues that Automatic is legally responsible as the manufacturer or as the installer/assembler. Automatic characterizes its role as merely an installer.

There is little dispute concerning the occurrence. The overhead elevator door was supported by a single cable. The door fell on Hinojasa when the cable snapped. According to the plaintiff's experts the exposed cable exhibited a shear fracture which was most likely caused by some external force such as a hand truck or a forklift truck coming into contact with the cable. The plaintiff's experts identified several defects in the system supporting the door.

The previous owner of the premises had the freight elevator installed in 1962 or 1963 as part of an extensive conveyor system. The system was designed and furnished by Standard Conveyor Company, which is not a party to this suit. Frank Wieckowski, the president of Automatic, testified that his first contact with the project occurred when Standard Conveyor called Automatic for a quotation to install a part of the system. The bid of Automatic was accepted. Neither Automatic nor Standard Conveyor had a copy of the contract at the time of the trial. The evidence concerning the installation of the doors is sparse because Automatic denies that it installed the door. There is a considerable question raised by Automatic as to whether there is sufficient evidence to raise a question of fact concerning whether Automatic installed the door. We will not reach that issue or relate the facts concerning that issue because of our disposition of this matter on other grounds. Frank Wieckowski was the mechanic in charge of the project and stated that Automatic drilled a 24-foot hole for the hydraulic piston and cylinder similar to a gas station hoist, and put in the guide rails and the car. Wieckowski testified that in installing the system, Automatic followed the blueprints and specifications provided by Standard Conveyor. Automatic could make no structural changes without Standard Conveyor's approval.

The plaintiff makes three arguments on appeal. First he asserts that Standard Conveyor merely provided a professional service as the engi-

neer/designer of the elevator and that Automatic manufactured, assembled and sold the product. He cites *Brannon v. Southern Illinois Hospital Corp.* (1978), 69 Ill. App. 3d 1, 386 N.E.2d 1126, to support his contention that one who installs a product may be considered a manufacturer. However, in *Brannon* the defendant contracted to *"furnish* and install elevators and dumbwaiters." (Emphasis added.) (69 Ill. App. 3d 1, 4, 386 N.E.2d 1126, 1128.) The *Brannon* case hinges on the fact that the defendant there was responsible for supplying as well as installing the elevators and dumbwaiters. The *Brannon* court relied on *Court v. Grzelinski* (1978), 72 Ill. 2d 141, 379 N.E.2d 281. In *Court,* the complaint alleged that the defendant *sold* the used automobile in which it had installed a defective gas tank. The distinguishing factor in *Court* is the fact that the defendant sold the product. Here there is no evidence that Automatic either supplied or sold the elevator. The evidence is that the owner of the premises decided to place a conveyor system on the premises and that Automatic made a bid to Standard Conveyor to install an elevator that was provided by Standard Conveyor. Automatic was to install it according to plans and specifications drafted by Standard Conveyor. According to the terms of the contract with Standard Conveyor, Automatic could not deviate from these plans and specifications. *Brannon* therefore does not support the plaintiff's contention that Automatic should be considered a manufacturer.

Hinojasa next argues that Automatic is liable as the installer/assembler of the defective product. He cites *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 617, 210 N.E.2d 182, 185, for the general proposition that the assembler of parts may be liable in tort for a defective product. As an application of that principle the plaintiff cites *Pierce v. Liberty Furniture Co.* (1977), 141 Ga. App. 175, 179, 233 S.E.2d 33, 37, where the court stated that "an entity which assembles component parts and sells them as a single product under its trade name is a 'manufacturer' within the meaning of [strict liability doctrine]."

An assembler of parts certainly may be responsible in strict liability in tort under circumstances comparable to those in *Pierce.* However, the circumstances which existed in *Pierce* are not even remotely comparable to the circumstances in the case at bar. Automatic installed a product supplied by Standard Conveyor. It did not assemble and sell the product.

Hinojasa's third argument is that Automatic played an integral role in introducing the elevator system into the stream of commerce and consequently should be held strictly liable. The plaintiff cites *Dubin v. Michael Reese Hospital & Medical Center* (1979), 74 Ill. App. 3d 932, 393 N.E.2d 588, generally for that principle. Since arguments were heard in this cause, the *Dubin* case was reversed by the Illinois Supreme Court. *Dubin v. Michael Reese Hospital & Medical Center* (1980), 83 Ill. 2d 277, 414 N.E.2d 350.

We will not attempt to define the limits of those persons who play an integral role in placing a defective product in the stream of commerce. Section 402A of the Restatement (Second) of Torts provides that strict liability may be imposed upon the seller of a defective product who is engaged in the business of selling that product. Section 402A is worded as follows:

"(1) One who *sells any product* in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) *the seller is engaged in the business of selling such a product*, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold." (Emphasis added.) Restatement (Second) of Torts §402A (1965).

Later decisions have extended the doctrine of strict liability to all participants in the chain of distribution. The chain of distribution has been held to include retailers (*Peterson v. Lou Bachrodt Chevrolet Co.* (1975), 61 Ill. 2d 17, 329 N.E.2d 785), distributors (*Dunham v. Vaughan & Bushnel Mfg. Co.* (1969), 86 Ill. App. 2d 315, 229 N.E.2d 864 *aff'd* (1969), 42 Ill. 2d 339, 247 N.E.2d 401), lessors (*Galluccio v. Hertz Corporation* (1971), 1 Ill. App. 3d 272, 274 N.E.2d 178), and those who supply a product incidental to the regular course of business (*Bainter v. Lamoine LP Gas Co.* (1974), 24 Ill. App. 3d 913, 321 N.E.2d 744). However, we do not believe that the policy reasons which justify extending the doctrine of strict liability to parties such as retailers or distributors are applicable to product installers. For example, an installer is not involved in the sale of the product and therefore receives no profit from placing the defective product in the stream of commerce. (*Suvada.*) Also, the fact that an installer lacks the purchasing power of a retailer or a distributor makes it less able to exert pressure upon manufacturers to enhance product safety. *Peterson v. Lou Bachrodt Chevrolet Co.* (1975), 61 Ill. 2d 17, 20, 329 N.E.2d 785, 787.

The plaintiff has cited no case which extends the doctrine of strict liability to a situation such as this, where the defendant merely installed a product supplied by another. Because we do not believe that the rationale behind the doctrine extends as far as an installer who is not also the seller of a product, the judgment of the circuit court must be reversed.

Reversed.

JOHNSON and ROMITI, JJ., concur.