Alfred **MATA**, Plaintiff,

v.

**SOUTHERN PACIFIC TRANSPORTATION COMPANY**, Defendant.

No. C–82–3088 EFL.

United States District Court, N.D. California.

Sept. 13, 1984.

Howard Moore, Jr., Oakland, Cal., for plaintiff.

George S. Duesdieker, San Francisco, Cal., for defendant.

## MEMORANDUM DECISION

LYNCH, District Judge.

Plaintiff's claim based on 42 U.S.C. § 1981 was tried by a jury which rendered its verdict in favor of the defendant. This Court tried plaintiff's claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, based on all the evidence presented to the jury. As to the Title VII action, this Court renders judgment in favor of the defendant for the reasons set out below.

The basis of plaintiff's action is that the defendant terminated his employment because of plaintiff being of Hispanic origin and that such act and policy deprived him of equal employment opportunity in violation of federal law.

*Law:* To prove a *prima facie* case plaintiff has the burden of proving that (1) he belongs to a racial minority; (2) he was fired from his job; and (3) a non-minority person involved in the same conduct for which he was fired was treated differently. *International Brotherhood of Teamsters v. United States, et al.,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). If a *prima facie* case is established, defendant must establish a legitimate nondiscriminatory reason for its actions. *McDonnell Douglas Corp. v. Green, supra.* If defendant so establishes a legitimate reason, then plaintiff must prove that the employer articulated nondiscriminatory reason for its action which was a pretext for discrimination. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

The recent United States Supreme Court case of *United States Postal Service v. Aikens,* 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983) reaffirmed the above stated law as long as the *prima facie* case method was not used in a mechanical or rigid manner.

The Court stated:

But when the defendant fails to persuade the district court to dismiss the action for a lack of a *prima facie* case, and responds to the plaintiff's proof by offering evidence of the reason for plaintiff's rejection, the fact finder must then decide whether the rejection was discriminatory within the meaning of Title VII. At this stage, the *McDonnell-Burdine* presumption "drops from the case," and "the factual inquiry proceeds to a new level of specificity." After Aikens presented his evidence to the district court in this case, the Postal Service's witnesses testified that he was not promoted because he had turned down several lateral transfers that would have broadened his Postal Service experience. The district court was then in a position to decide the ultimate factual issue in the case.

The "factual inquiry" in a Title VII case is "whether the defendant intentionally discriminated against the plaintiff." In other words, is "the employer ... treating 'some people less favorably than

others because of their race, color, religion, sex, or national origin.'" The *prima facie* case method established in *McDonnell Douglas* was "never intended to be rigid, mechanized, or ritualistic. Rather it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination." Where the defendant has done everything that would be required of him if the plaintiff had properly made out a *prima facie* case, whether the plaintiff really did so is no longer relevant. The district court has before it all the evidence it needs to decide whether "the defendant intentionally discriminated against the plaintiff."

On the state of the record at the close of the evidence, the District Court in this case should have proceeded to this specific question directly, just as district courts decide disputed questions of fact in other civil litigation. As we stated in *Burdine:*

"The plaintiff retains the burden of persuasion. [H]e may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."

The case of *United States Postal Service v. Aikens, supra* also reaffirms the rule that the alleged discrimination against plaintiff, did not have to show direct evidence of discrimination, the plaintiff could prove his case by circumstantial evidence of discrimination. In summary, the duty of the trier of fact is to determine whether the defendant intentionally discriminated against the plaintiff because of plaintiff's national origin and to use all of the evidence in the case, both direct and circumstantial, to determine this issue.

*Facts:* Plaintiff was employed by the defendant on April 12, 1978, as a laborer and was terminated effective August 31, 1981, for insubordination.

On July 9, 1981, the plaintiff injured his hand while working for Southern Pacific.

He claimed his hand was cut, bruised and bleeding. He immediately went to the Port Medical Center and saw a physician who gave him a tetanus shot, took X-rays, and bandaged the wound. He then proceeded back to the defendant's yard and reported to his superintendent, L.R. Holsinger, to whom he gave the medical slip. The doctor's slip indicated that he could go back to work on a full-time basis on Monday, July 13, and he could work on light duty the next day, Friday, July 10. The plaintiff testified that he told Holsinger that he was going to make an appointment to see his own personal physician. He agreed that Holsinger ordered him to come back to the office the next day (July 10) and fill out the accident report. Plaintiff claimed he could not fill out the accident report that day as his hand was sore. The plaintiff did not report to work to sign the accident report on July 10 and remained off work until Monday, July 20. Plaintiff contended this was on the advice of his own personal physician, Dr. Derr. Contrary to plaintiff's statement, the Court finds that plaintiff clearly was able to come to work on Friday, July 10 to sign the accident report.

Holsinger's testimony was that the accident happened to the plaintiff while he was working as a helper to another Southern Pacific employee, E.L. Johnson, who is white. He testified that the plaintiff's cut did not look very serious, but the plaintiff said "I'll take four or five days off for this injury and then everything will be lovely."

Because of plaintiff's failure to report to work the next day to sign the accident report, Holsinger initiated charges of insubordination against plaintiff. The Court finds Holsinger to be a credible witness and further determines that plaintiff did tell him that he wanted to take four to five days off, and in fact, that was plaintiff's motive for going to his own personal physician, namely, to use this minor injury as an excuse to take a paid holiday.

Dr. Harikian, who treated plaintiff at the Port Medical Center, testified that his specialty is occupational medicine and that

when he saw the plaintiff, he had a small abrasion and that the injury was minimal.

Plaintiff's physician, Dr. Derr, testified that plaintiff's injury was simple and that he leaves it up to his patients, within reason, to choose when they should return to work. He prescribed no type of pain pills.

Mr. E.L. Johnson testified that he filled out the accident report on Monday rather than Friday as plaintiff wasn't there on Friday.

Mr. M.D. Ongerth, the superintendent of the Western Division at Southern Pacific, made the decision to fire plaintiff for violation of Southern Pacific's Rule 801, insubordination. He testified that this was based on plaintiff's insubordination re Holsinger's order plus the plaintiff's dismal personnel record which included a violation of Rule 801 the year before when he was involved in a fight and at that time, after suspending plaintiff, he allowed him to come back to work.

Leslie Scherling, the labor relations officer of Southern Pacific, testified that he reviewed Ongerth's decision to determine whether the firing for insubordination should stand. He testified that this was plaintiff's second dismissal in a year and that he saw no reason to overturn Ongerth's decision. An interrogatory indicated that this witness did not even know the plaintiff was Hispanic. He testified that Johnson was not disciplined for not filing the accident report on Friday, as the urgency was not the same with non-injured people.

The Court finds that the plaintiff did put on a *prima facie* case under the aforestated facts. However, the Court also finds that the defendant established a legitimate nondiscriminatory reason for its actions, namely, insubordination, a prior poor disciplinary record, and in particular, a suspension for insubordination within the past year. The Court also finds that plaintiff did not bear his burden of proof that this articulated nondiscriminatory reason for defendant's actions was merely a pretext for discrimination. In addition, the

Court finds, as set out by Justice Rehnquist in the *United States Postal Service v. Aikens, supra,* that the plaintiff was not intentionally discriminated against by the defendant, *i.e.,* that the defendant did not fire the plaintiff because of plaintiff's race or national origin. The Court finds that race did not enter into the defendant's decision to terminate the plaintiff's employment, and while defendant's decision to terminate him for failing to come into the office to fill out the report was somewhat harsh, it clearly was not based on race or national origin.

Accordingly, for the reasons stated in this opinion, the Court renders judgment in favor of the defendant, with each side to bear its attorney's fees and costs.

The above shall constitute the required findings of fact and conclusions of law required under Rule 52 of the Federal Rules of Civil Procedure.