Raymond MALLOY & Margaret Malloy, husband and wife, Plaintiffs,

v.

DOTY CONVEYOR, et al., Defendants,

v.

ZINIZ CORPORATION, Third Party Defendant,

v.

DARNELL CORPORATION and Daniel Bingenheimer, Jr. t/a Bing Engineering, Fourth Party Defendants.

Civ. A. No. 91–3740.

United States District Court, E.D. Pennsylvania.

April 16, 1993.

Elizabeth McKenna, Tara L. Flynn, Edward J. Hovatter, Harvey, Pennington, Herting & Renneisen, Ltd., Philadelphia, PA, for plaintiffs.

Robyn F. McGrath, Robyn J. Farrell, Sweeney, Sheehan & Spencer, Thomas L. Delevie, Mark D. Mazza, Partenheimer & Di Domenicis, Philadelphia, PA, for Watkins Aircraft Support Products.

Joseph J. Serritella, Pepper, Hamilton & Scheetz, Philadelphia, PA, for Rapistan/Wil-Mat, Inc.

James A. Bosakowski, Thompson & Pennell, James L. McKenna, Deasey, Mahoney, Bender & McKenna, Philadelphia, PA, for Phoenix Mfg. Co.

George F. Dale, Dale & Korolishin, P.C., Philadelphia, PA, Ann M. Mau, King of Prussia, PA, for Ziniz, Inc.

Edward C. Mintzer, McWilliams and Mintzer, P.C., Philadelphia, PA, for Darnell Corp., Ltd.

## *MEMORANDUM*

ROBERT F. KELLY, District Judge.

Plaintiffs, Raymond and Margaret Malloy, filed this personal injury action after Plaintiff-husband ("Mr. Malloy") was injured while working at the Federal Express depot at the Philadelphia International Airport. Plaintiffs allege that on July 18, 1989 Mr. Malloy, while walking on a caster deck,[1] was injured when his right foot was caught in an opening surrounding one of the casters. This caused Mr. Malloy to fall forward and his left foot to slip off the edge of the caster deck. An approaching dolly filled with cargo pinned his left foot against the deck's edge. As a result of this accident, Mr. Malloy suffered injuries to his left foot which eventually necessitated transmetatarsal amputation.

Before the Court is the Motion of Defendant Doty Conveyor ("Doty") for Summary Judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure.[2] Summary judgment is properly granted if, viewing the evidence in a light most favorable to the non-moving party, the court is convinced that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Lang v. New York Life Ins. Co.,* 721 F.2d 118, 119 (3d Cir.1983). For the

reasons set forth below, summary judgment is granted in favor of Doty.

## I. STRICT LIABILITY

Doty contends that it cannot be held strictly liable under § 402A of the Restatement (Second) of Torts, as adopted by the Pennsylvania Supreme Court in *Webb v. Zern,* 422 Pa. 424, 220 A.2d 853 (1966), because an installer does not come within the purview of § 402A. Plaintiffs maintain that § 402A is applicable to Doty because "Pennsylvania courts have rejected a restrictive, static reading of § 402A." Plaintiffs Brief at 4. The issue presented to this Court is whether strict products liability should be extended to installers of defective products. The Pennsylvania Supreme Court has yet to rule on this matter, and therefore this Court must predict the course that it would take if confronted with this issue. *Lang v. New York Life Ins. Co.,* 721 F.2d 118, 119 (3d Cir.1983).

Section 402A states:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for the physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) The seller is engaged in the business of selling such a product, and

(b) It is expected to and does reach the user or consumer without substantial changes in the condition in which it is sold.

(2) The rule stated in subsection (1) applies although

(a) The seller has exercised all possible care in the preparation and sale of his product, and

(b) The user or consumer has not bought the product from or entered into any contractual relation with the seller.

On its face, § 402A applies only to sellers of defective products. However,

---

1. A caster deck is an elevated steel platform that contains openings for inverted casters. Packages are placed on the caster deck and move along the deck to a final destination.

2. Rule 56(c) states:
   The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.
   Fed.R.Civ.P. 56(c).

Pennsylvania courts have extended the definition of seller to include "all suppliers in the chain of distribution, whether retailers, part-makers, assemblers, owners, sellers, lessors, or any other relevant category". *Burch v. Sears, Roebuck and Co.*, 320 Pa.Super. 444, 467 A.2d 615, 621 (1983) (citations omitted).

■ The Pennsylvania Supreme Court has set forth four factors to consider when· determining whether strict liability should be extended to a particular party. *Francioni v. Gibsonia Truck Corp.*, 472 Pa. 362, 372 A.2d 736, 739–40 (1977). These factors are: (1) whether the defendant is the only member of the marketing chain available to the injured plaintiff; (2) whether the imposition of strict liability would serve as an incentive to safety; (3) whether the defendant is in a better position than the consumer to prevent the circulation of defective products; and (4) whether the defendant can distribute the cost of compensating for injuries resulting from defective products by charging for it in the business. *Id.* 372 A.2d at 739.

■ Plaintiffs contend that Doty, as the installer of the conveyor, is the only member of the marketing chain against whom they may assert a direct claim to recover damages for Mr. Malloy's injuries. Apparently, Federal Express incorrectly informed Plaintiffs that Doty was the manufacturer of the conveyor in question. Relying on this information, Plaintiffs named Doty as the manufacturer of the allegedly defective caster deck. Doty compounded this problem by admitting in its response to Plaintiffs interrogatories that it was the manufacturer of the conveyor.[3] However, subsequent to the running of the applicable statute of limitations, Plaintiffs learned that Doty was not the manufacturer of the conveyor.

While Doty's response to Plaintiffs' interrogatories was incorrect, this had no effect on Plaintiffs' failure to sue the proper manufacturer within the applicable statute of limitations. The statute of limitations on this action ran on July 18, 1991, and Doty responded to Plaintiffs' interrogatories on Sep-

tember 5, 1991. As such, Plaintiffs could not possibly have relied on this inaccurate information supplied by Doty. While Doty is the only party available to Plaintiffs with any connection to the conveyor, this is through Plaintiffs own accord and not through any fault of Doty.

With respect to the second factor, Doty maintains that the imposition of strict liability would not serve as an incentive tò safety because it did not distribute the conveyor upon which Mr. Malloy was injured, nor does it distribute that brand of conveyor. Plaintiffs contend that Doty could prevent the circulation of defective conveyors by refusing to install any conveyor known to present a danger to its users. According to Plaintiffs, refusals to install dangerous products will force manufacturers to incorporate appropriate safety devices on such products.

■ The imposition of strict products liability under § 402A requires that the defendant be in the chain of distribution of the defective product. *Burch v. Sears, Roebuck and Co.*, 320 Pa.Super. 444, 467 A.2d 615, 621 (1983). The reason for this requirement is to place the burden for compensating injuries on those who can control the defect and spread its costs through pricing. *Id.* In this instance, Doty is not within the chain of distribution of this allegedly defective caster deck. While Doty does distribute various conveyors, it did not distribute this particular conveyor or even the brand of conveyor involved in this incident. Therefore, the imposition of strict liability will not serve as an incentive to safety in the present case.

With respect to the third factor, Doty contends that it is not in a better position than the consumer to prevent the circulation of this allegedly defective conveyor. Doty concedes that for those products that it does distribute, the imposition of strict liability would be proper. However, Doty does not distribute the type of conveyor at issue. Plaintiffs argue that strict liability should be imposed because Doty, as a seller and instal-

---

**3.** The reason for these inaccurate identifications of the manufacturer on the part of Federal Express and Doty was due to the fact that Doty supplied several conveyors at the Federal Ex- press Depot. As was later discovered, the conveyor upon which Mr. Malloy was injured was not supplied by Doty.

ler of caster decks and other conveyor systems, knew that the conveyor was lacking adequate safety devices which rendered it unreasonably dangerous to its users. According to Plaintiffs, this knowledge, coupled with Doty's ongoing business relationship with Federal Express, imparts upon Doty the duty to inform Federal Express of the existence of any dangerous conditions.

Since Doty is not within the chain of distribution, the imposition of strict liability on it would not serve the purpose of § 402A, which is to place the burden of compensating for injuries on those parties who can control the defect and are able to spread its cost through increased prices. *Id.*

Plaintiffs go on to argue that Doty's contract required it to comply with ANSI Standard B20.1 which details safety requirements for conveyors and related systems. In support of this claim, Plaintiffs proffer a letter from Federal Express to Doty which attaches a list of various standards. (Attached as Exhibit F to Plaintiffs' Brief). This letter is actually a request by Federal Express for Doty to submit quotations to install a conveyor at the Philadelphia International Airport. This is not evidence that Doty assumed the duty to perform a safety inspection of the conveyor or report any dangerous conditions to Federal Express.

With regard to the fourth factor, the fact that Doty does not distribute the type of conveyor in question prevents it from distributing the cost of compensating for any resulting injuries. While price increases will serve to distribute the cost of compensating for injuries caused by conveyors that Doty does distribute, the objectives of § 402A will not be served by the imposition of strict liability in this instance. Furthermore, Doty bids on its installation jobs and incorporating such costs into its bids would not allow Doty to remain competitive in the installation market. For these reasons, Doty is unable to distribute its costs of compensating for these injuries through increased prices.

■ In addition to the four factors discussed above, Doty argues that strict products liability does not extend to parties who provide only services. *Villari v. Terminix Intern, Inc.,* 677 F.Supp. 330, 334 (E.D.Pa.

1987); *Klein v. Council of Chemical Ass'ns,* 587 F.Supp. 213, 223 (E.D.Pa.1984); *Hinojasa v. Automatic Elevator Co.,* 92 Ill.App.3d 351, 48 Ill.Dec. 150, 416 N.E.2d 45 (1980). In *Villari,* the court found that Terminix could be held strictly liable for injuries caused by its treatment of plaintiffs' home for termites because Terminix supplied the chemicals as well as the service. The court stated that such a "hybrid sale-service transaction" is within the purview of § 402A. *Villari v. Terminix Intern. Inc.,* 677 F.Supp. 330, 334 (E.D.Pa.1987). However, the court recognized that "[f]ederal courts applying Pennsylvania law have made clear that strict products liability has not been expanded to include persons who provide *only* services." *Id.*

■ Doty does not fall within the "hybrid sale-service" category because it did not supply the allegedly defective conveyor, it merely installed the conveyor. Moreover, an installer is a provider of services and not a seller of goods. *In re Merritt Logan, Inc.,* 901 F.2d 349, 353 (3d Cir.1990). Therefore, Doty merely provided a service and does not come within the reach of § 402A. *Id.; Villari v. Terminix Intern, Inc.,* 677 F.Supp. 330, 334 (E.D.Pa.1987); *Klein v. Council of Chemical Ass'ns,* 587 F.Supp. 213, 223 (E.D.Pa.1984).

The reasoning of *Hinojasa* is additional grounds for this Court to conclude that strict liability should not be extended to installers. In *Hinojasa,* the plaintiff brought suit against the installer of an elevator for injuries sustained when the overhead door fell on him. The Illinois court held that the installer was not liable under § 402A. The court reasoned that an installer is not involved in the sale of the product and does not receive a profit from placing a defective product in the stream of commerce. The court further reasoned that an installer lacks the purchasing power of a retailer or distributor, and is thus less able to exert pressure on the manufacturer to enhance the safety of the product. This Court finds that the rationale of *Hinojasa* is persuasive and germane to the matter at hand.

Plaintiffs cite *Michalko v. Cooke Color and Chemical Corp.*, 91 N.J. 386, 451 A.2d 179 (1982) in support of their contention that an installer can be held strictly liable for injuries when the installer fails to make the product safe or to warn of dangers inherent in its use. However, *Michalko* did not concern an installer of a machine, but rather an independent contractor who *rebuilt* a transfer press which was later determined to be defective. As such, *Michalko* does not support Plaintiffs' argument.

For these reasons, this Court predicts that the Supreme Court of Pennsylvania will conclude that strict products liability does not extend to mere installers of defective products. Thus, Doty's Motion for Summary Judgment on this matter is granted.

## II. BREACH OF WARRANTY

Plaintiffs also assert a claim for breach of warranty pursuant to the Pennsylvania Uniform Commercial Code. 13 Pa. C.S.A. § 2102. Plaintiffs contend that warranty protection extends as far and as broad as strict liability under § 402A. *Lemley v. J & B Tire Co.*, 426 F.Supp. 1376, 1377 (W.D.Pa.1977); *Kassab v. Central Soya*, 432 Pa. 217, 246 A.2d 848 (1968), *overruled on other grounds by AM/PM Franchise v. Atlantic Richfield*, 526 Pa. 110, 584 A.2d 915 (1990). However, this Court has ruled that Doty, as the installer of the conveyor, is not subject to strict products liability under § 402A.

Moreover, the supplying of services does not constitute a sale under the U.C.C. *In re Merritt Logan, Inc.*, 901 F.2d 349 (3d Cir. 1990); *Angell v. Tubies*, 36 Pa. D. & C.3d 41 (1983). In *Merritt Logan*, the Third Circuit found that an installer is a provider of services and not a seller under the U.C.C. As such, Doty does not fall within the purview of the U.C.C. Therefore, summary judgment is granted on this claim.

## III. NEGLIGENCE

Doty claims that summary judgment should likewise be granted on Plaintiffs' negligence claim because it did not owe to Plaintiffs or Federal Express the duty to ensure that the conveyor possessed the proper safety features. Plaintiffs argue that Doty failed to comply with ANSI B20.1, and therefore breached its duty of care. ANSI B20.1 provides that conveyors should be equipped with tread plates as well as nip and shear point guards. (Attached as Exhibit D to Plaintiffs' Brief). Plaintiffs maintain that Doty should have installed these safety devices or notified Federal Express that these safety devices were absent. In addition to a contractual duty, Plaintiffs contend that Doty had a social duty to ensure that all appropriate safety devices were made a part of the conveyor. *St. Clair v. B & L Paving Co.*, 270 Pa.Super. 277, 411 A.2d 525 (1979).

Plaintiffs' evidence does not show that Doty assumed a duty to comply with ANSI B20.1 or that Doty assumed the duty to conduct any safety inspections of the conveyor. As previously noted, the letter sent from Federal Express merely requested Doty to submit a bid to install a conveyor at the Federal Express Depot. Doty did not assume any duty as a result of this letter. Without the assumption of this duty, Doty does not have a legal obligation to create the safety devices or notify Federal Express of the alleged defect even though Doty may have had knowledge of the dangerous condition. *See Wenrick v. Schloemann–Siemag Aktiengesellschaft*, 523 Pa. 1, 564 A.2d 1244 (1989).

Moreover, knowledge of a potential danger created by others does not give rise to a duty to abate the danger or to liability for injuries caused by such danger. *Id.* In *Wenrick*, the Pennsylvania Supreme Court held that a designer of an electrical box was not negligent since the designer did not have any control over the placement of the box, and such placement was the cause of the injuries. Similarly, Doty cannot be held liable for injuries caused by the lack of safety features because Doty did not have any control over the design of the conveyor. Doty's duty was to install the conveyor as it was received from the manufacturer. It was not Doty's obligation to re-design the conveyor or to ensure that the safety features were incorporated into the design of the conveyor. Ac-

cordingly, summary judgment is granted on this claim.

## IV. CONCLUSION

Based on the foregoing reasons, this Court enters the following Order:

### ORDER

AND NOW, this 15th day of April, 1993, upon consideration of Defendant Doty Conveyor's Motion for Summary Judgment and all responses thereto, it is hereby ORDERED that said Motion is GRANTED.