## Coppersmith v. Herco Inc.

*Stephen J. Keene,* for plaintiff.
*Harvey Freedenberg,* for defendant.

TURGEON, *J.,* February 7, 1996—On June 8, 1993, plaintiff Nicole Coppersmith was injured while riding on a water slide at Hersheypark. Plaintiff has filed a complaint against defendant Herco Inc., which owns and operates Hersheypark, in which she alleges negligence, strict liability and breach of warranty. Plaintiff also seeks punitive damages. Defendant has filed preliminary objections in the nature of a demurrer to the strict liability and breach of warranty counts. Oral argument on the preliminary objections was held before an en banc panel of this court on November 29, 1995.

In her complaint, plaintiff alleges that after ascending wooden steps, she and her companion waited in a line on a platform to be seated in an inflatable two-person raft. When a raft became available, plaintiff sat in the rear seat. At that time, both she and her companion noticed that the raft appeared to be underinflated and attempted to get the attention of the ride operator, however, this was to no avail and plaintiff's raft was sent down the winding, enclosed tunnel on rushing water. During the ride, plaintiff's head struck the tunnel's ceiling and/or wall three times, rendering her unconscious.

## STRICT PRODUCTS LIABILITY

In Count II, plaintiff alleges that Herco is strictly liable to her because it held the Slidewinder open for public use even though it was capable of causing, and did cause, serious injury to its passengers, failed to adequately warn passengers of the serious dangers in riding it, and provided a raft which was defective. Defendant has demurred to this allegation which is based upon section 402A of the Restatement (Second) of Torts.

Pennsylvania adopted section 402A in *Webb v. Zern,* 422 Pa. 424, 220 A.2d 853 (1966). That section provides:

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it was sold." *Id.* at 427, 220 A.2d at 854.

Defendant's main argument in support of its demurrer is that the plaintiff has failed to state a cause of action since, as a matter of law, defendant cannot be considered

to be a "seller" under section 402A since it is not in the chain of distribution of the Slidewinder nor is it in the business of selling such rides.

A demurrer admits every well-pleaded material fact set forth in the pleadings to which it is addressed as well as all inferences reasonably deducible therefrom. A demurrer is properly sustained where the complaint indicates on its face that the plaintiff's claim cannot be sustained, and the law will not permit recovery. *Lordell v. Leichtenberger,* 442 Pa. Super. 21, 24, 658 A.2d 399, 401 (1995). (citations omitted) If there is any doubt as to the propriety of a judgment in favor of a demurring party, it should not be entered. *Eby v. Milton Hershey Medical Center,* 21 D.&C.4th 281, 288 (1993) (citing *Creeger Brick and Building Supply Inc. v. Mid-State Bank and Trust Co.,* 385 Pa. Super. 30, 33, 560 A.2d 151, 152 (1989)).

The Pennsylvania Supreme Court has recognized that while section 402A appears on its face to apply only to *sellers* of defective products, that term has been given broad application; its meaning extended to include "anyone who, as a supplier, enters into the business of supplying the public with products which may endanger them." *Musser v. Vilsmeier Auction Co. Inc.,* 522 Pa. 367, 371-72, 562 A.2d 279, 281 (1989). Thus, Pennsylvania courts include in the definition of "seller" "all suppliers . . . in the chain of distribution, whether retailers, partmakers, assemblers, owners, sellers, lessors, or any other relevant category. . . ." *Burch v. Sears, Roebuck and Co.,* 320 Pa. Super. 444, 456, 467 A.2d 615, 621 (1983).

The reason for this broad interpretation is to effectuate the policy behind strict liability, which is the protection of the public against defective products. *Musser, supra* at 371, 562 A.2d at 281. The essential consideration

in broadening the meaning of "seller" was summarized by our Supreme Court as follows:

"What is crucial to the rule of strict liability is not the means of marketing but rather the fact of marketing, whether by sale, lease, or bailment, for use and consumption by the public. . . . Where the fundamental principles are applicable, the imposition of artificial distinctions will only frustrate the intended purpose." *Id.* at 372, 562 A.2d at 281, (quoting *Francioni v. Gibsonia Truck Corp.,* 472 Pa. 362, 367, 372 A.2d 736, 738-39 (1977)).

We are not convinced, that given this broad interpretation of the meaning of "seller" or "supplier" under section 402A, that the defendant, as a matter of law, could not be deemed to be a "seller" or "supplier" for the purposes of section 402A, particularly in light of the absence of appellate rulings on the viability of section 402A actions vis-a-vis amusement rides and their operators. Defendant is in the business of supplying the consuming public with rides on its amusements, specifically, in this case, a ride on the Slidewinder which involved putting the plaintiff in possession of a raft which was allegedly defective. Defendant thus might be considered the supplier of a product which could endanger the public.

We do note that the Pennsylvania Supreme Court has cautioned, however, "that the broadened concept of 'supplier,' . . . is not without practical limits. The limits obtain in the purposes of the policy. When those purposes will not be served, persons whose implication in supplying products is tangential to that undertaking will not be subjected to strict liability for the harms caused by defects in the products." *Musser, supra* at 372, 562 A.2d at 281.

Defendant has suggested that the extension of strict liability to it will not satisfy the purposes of the policy and argues that, of the four factors set forth by the

Pennsylvania Supreme Court to consider in deciding whether strict liability should be extended, the plaintiff can prove none of them. Those factors are: (1) whether the defendant is the only member of the marketing chain available to the injured plaintiff; (2) whether the imposition of strict liability would serve as an incentive to safety; (3) whether the defendant is in a better position than the consumer to prevent the circulation of defective products; and (4) whether the defendant can distribute the cost of compensating for injuries resulting from defective products by charging for it in the business. *Malloy v. Doty Conveyor,* 820 F. Supp. 217, 220 (E.D. Pa. 1993) (citing *Francioni, supra* at 368-69, 372 A.2d at 739-40).

We disagree that none of these factors weighs in favor of the plaintiff here. First, whether the defendant is the only member of the marketing chain available to plaintiff cannot be answered at this early stage of the pleadings since the pleadings are devoid of any information regarding the identity of parties other than the defendant who might have been involved in the marketing chain. Accordingly, this doubt must be resolved in favor of the plaintiff.

Second, with regard to whether the imposition of strict liability would serve as an incentive to safety, the Supreme Court in *Musser* has noted that safety is promoted where the defendant is either the manufacturer and/or designer of the product. *Id.* at 372, 562 A.2d at 282. While it has not been alleged that defendant is the manufacturer and/or designer of the ride in question,[1] there is not yet a factual record developed which

1. Plaintiff argues that since it has alleged that the defendant installed the Slidewinder, a reasonable inference to be drawn therefrom is that it manufactured the ride as well. We disagree that this is a reasonable inference particularly in light of plaintiff's allegation

might reveal whether defendant took an active role in designing the rides it installs at Hersheypark. Again, this doubt must also be resolved in favor of the plaintiff.

Third, the *Musser* court noted that whether the defendant is in a better position than the consumer to prevent the circulation of a defective product turns on the existence of an ongoing relationship between the defendant and the manufacturer "from which some financial advantage inures to the benefit of the [manufacturer] and which confers some degree of influence on the [defendant]" in the manufacturing process. *Id.* at 374, 562 A.2d at 282. Again, the lack of a factual record as to whether defendant may have had some leverage with regard to the design/manufacture of the Slidewinder renders this question unanswerable at the demurrer stage.

Finally, it is reasonable to conclude that the defendant can distribute the cost of compensating for injuries resulting from defective products by charging for it in the price of admission to Hersheypark. Accordingly, application of this four-part test, at this stage of the pleadings, weighs in favor of allowing the plaintiff to go forward on her strict liability claim.

## BREACH OF WARRANTY

In Count III, plaintiff alleges that Herco breached its express and/or implied warranties that its rides and equipment were merchantable, fit and safe for the particular purpose for which they were sold, and that they were free from defects.

---

that defendant failed to operate the ride "in accordance with the manufacturer's recommendations for operation." (Complaint ¶33(g).) This allegation clearly infers that the defendant and the manufacturer are not one and the same.

First, we agree with defendant's argument set forth in its brief, that the plaintiff has failed to identify any representations or promises made by defendant to her which might establish the existence of an express warranty. Accordingly, defendant's demurrer will be sustained with regard to this allegation and plaintiff will be granted leave to amend her complaint to set forth what specific representations and/or promises the defendant expressed to her.

Next, plaintiff has alleged breach of the implied warranties of merchantability and fitness for a particular purpose which are set forth in article 2 of the Uniform Commercial Code, as adopted in Pennsylvania, 13 Pa.C.S. §§2314 and 2315. Defendant demurs to these claims on the basis that it does not manufacture, design, sell or distribute Slidewinder rides.

Generally, for article 2 warranty provisions to apply, there must be a sale. *Williams v. West Penn Power Co.,* 313 Pa. Super. 461, 465, 460 A.2d 278, 281 (1983). In addition, article 2 warranty provisions apply to some lease transactions, so long as the lease in question has attributes similar to a sale of goods.[2] *Keblish v. Thomas Equipment Ltd.,* 541 Pa. 20, 26, 660 A.2d 38, 41 (1995); *Cucchi v. Rollins Protective Services,* 524 Pa. 514, 521, 574 A.2d 565, 569 (1990) (plurality opinion).

Plaintiff has argued that the act of defendant in supplying her with a raft created either a lease or a bailment.[3]

---

2. We note that on July 9, 1993, article 2A of Pennsylvania's Commercial Code, entitled leases, became effective. 13 Pa.C.S. §2A101 et seq. Article 2A specifically applies the same warranty protections provided for in the sales section to leases. See 13 Pa.C.S. §§2A-210 through 2A-216. However, article 2A does not apply to this case since the transaction in question occurred on June 8, 1993.

3. While Pennsylvania courts have not addressed this issue, we have found two cases involving similar facts in which the relationship

However, since we conclude that even assuming the act of the defendant in giving temporary possession of the raft to the plaintiff could be considered a lease or bailment, it was, nevertheless, not the type of transaction with attributes similar to a sale of goods and thus, we believe article 2 warranty provisions cannot apply.

In *Keblish,* a majority of the Supreme Court refused to extend article 2 warranty protection to the lease in question. The court noted that the transaction, involving the lease of heavy equipment for one day revealed little, if any, similarity with the sale of goods:

"The limited time frame in which the front-end loader remained in the lessee's possession gives rise to a substantial distinction between the expectations and obligations of the lessee in that situation as compared to one who commits to a long-term lease or an outright

---

between the patron and the amusement ride owner/operator was considered a bailment: *Golt by Golt v. Sports Complex Inc.,* 644 A.2d 989 (Del. Super. 1994); *Gray v. Snow King Resort Inc.,* 889 F. Supp. 1473 (D. Wyo. 1995).

In *Golt,* the defendant amusement park operator sought entry of summary judgment on a strict product liability claim in a case where the plaintiff was injured while riding in a go-cart. The court denied the motion holding that the relationship of the parties was one of bailment and not the sale of a service. *Id.* at 992-93.

In *Gray,* the plaintiff was injured while riding on an amusement ride called the Alpine Slide, which involved a patron navigating a wheeled bobsled down a winding trough-shaped slide. The owner and operator of the slide sought summary judgment on the claims of breach of warranty and strict product liability on the basis that it did not manufacture, distribute or sell the Alpine Slide and sleds. The court denied summary judgment holding that the furnishing of a sled to the patron constituted a bailment. *Id.* at 1477 (citing *Golt* at 992).

purchase where a transfer of title occurs." *Id.* at 27, 660 A.2d at 41-42.

We find *Keblish* dispositive of this issue. Here, assuming a lease or bailment of the raft existed, the duration of the transaction lasted far less than one day, probably minutes, providing a substantial distinction between this situation and that of a sale.

Accordingly, we enter the following:

### ORDER

And now, February 7, 1996, defendant's preliminary objections in the nature of a demurrer to Count II (strict liability) of plaintiff's complaint is hereby overruled. Defendant's demurrer to Count III (breach of warranties) is sustained. Plaintiff is granted leave to amend her complaint within 20 days from receipt of this order in conformity with the attached opinion.