**Susan ROSSETTI Plaintiff,**

v.

**BUSCH ENTERTAINMENT CORPORATION d/b/a Sesame Place, et al., Defendants.**

**No. CIV. A. 99–3312.**

United States District Court, E.D. Pennsylvania.

Feb. 16, 2000.

Joseph A. Zenstein, Jenkintown, PA, for Susan Rossetti, Plaintiff.

Thomas A. Brophy, Marshall, Dennehey, Warner, Coleman & Goggin, Norristown, PA, for Busch Entertainment Corporation d/b/a Sesame Place, Waterworld Products, Inc., Defendants.

Thomas L. Gowen, Murphy, Oliver, Caiola and Gowen, Norristown, PA, Stephen W. Barry, Rossi, Barry, Corrado, Grassi & Radell, Wildwood, NJ, for Waterworld Products, Inc.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

Plaintiff Susan Rossetti seeks to recover damages for injuries she allegedly sustained while riding on an attraction at an amusement park. Defendant Busch Entertainment Corporation d/b/a Sesame Place ("Busch"), the amusement park owner, seeks partial summary judgment on plaintiff's breach of warranty (count II) and strict liability (count III) claims. Because plaintiff's purchase of an admission ticket to ride attractions at an amusement park is not a "good" with respect to plaintiff's breach of warranty claim and because plaintiff has failed to offer any evidence to justify affixing strict liability to Busch in this case, Busch's motion will be granted.

## I. FACTS

The following material facts are not in dispute or have been construed in the light most favorable to plaintiff, and all reasonable inferences have been drawn in plaintiff's favor. Plaintiff, accompanied by friends and family, went to Sesame Place, an amusement park, which is owned and operated by Busch. Like all park patrons, plaintiff paid an admission fee to enter the park. While at the park, plaintiff went for a ride on what is known as the "Sky Splash" attraction. The "Sky Splash" con-

sists of a water slide on which small groups of park patrons descend in over-sized rafts. At one point, the raft rose and came down hard, jolting plaintiff. As a result of that "jolt," plaintiff suffered serious injury to her back.

Plaintiff subsequently brought this action against Busch and Waterworld Products, a manufacturer and designer of the ride, setting forth claims of negligence (count I), breach of warranty (count II), and strict liability (count III). Because defendant Waterworld has yet to enter an appearance in this action, judgment against it on liability only was entered in plaintiff's favor. *See* Order filed November 30, 1999.

## II. LEGAL STANDARD

Summary judgment is appropriate if the moving party can "show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). When ruling on a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court must accept the non-movant's version of the facts as true and resolve conflicts in the non-movant's favor. *See Big Apple BMW, Inc. v. BMW of N. Amer., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

The moving party bears the initial burden of demonstrating the absence of genuine issues of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant has done so, however, the non-moving party cannot simply rest on its pleadings. *See* Fed.R.Civ.P. 56(e). Rather, the non-movant must then "make a showing sufficient to establish the existence of every element essential to his case, based on the affidavits or by depositions and admissions on file." *Harter v. GAF Corp.*, 967 F.2d 846, 852 (3d Cir. 1992); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Indeed, to defeat "a properly supported summary judgment motion, the party opposing it must present sufficient evidence for a reasonable jury to find in its favor." *Groman v. Township of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995).

## III. DISCUSSION

### A. *Count II—Breach of Warranty*

In count II of her complaint, plaintiff claims that Busch breached its warranty of merchantability or fitness for use because "Sky Splash" was "not as warranted, nor free from defects, but to the contrary was in a dangerous and defective condition unreasonably dangerous to prospective users or consumers ...." Compl. ¶ 20. Plaintiff's breach of warranty claims falls under the auspices of the Uniform Commercial Code ("UCC"). The UCC, unless otherwise specified, "applies to transactions in goods." 13 Pa. Cons.Stat. Ann. § 2102. "Goods" are defined as:

[A]ll things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities ... and things in action. 'Goods' also includes the unborn young of animals and growing crops and other identified things attached to realty as described in section 2107 (relating to goods to be severed from realty; recording).

*See* 13 Pa. Cons.Stat. Ann. § 2105(a). "Goods to be severed from realty" include, among other things, contracts for the sale of minerals, structures to be removed from realty, and timber. *See* 13 Pa. Cons.Stat. Ann. § 2107(a)—(b).

In the instant case, plaintiff is essentially contending that Busch, by selling an admission ticket to her, which allowed her to ride on the park's attractions, was selling her a "good." To constitute a transaction of goods, however, " 'the subject matter of the transaction—the putative good—must be tangible and movable.' " *Dantzler v. S.P. Parks, Inc.*, No. CIV.A. 87–4434, 1988 WL 131428, at *5

(E.D.Pa. Dec.6, 1988) (quoting *Whitmer v. Bell Tel. Co. of Pa.*, 361 Pa.Super. 282, 522 A.2d 584, 587 (1987)).

*Dantzler* involved a claim for breach of warranty by a patron of Sesame Place who allegedly suffered injuries while on the "Runaway Rapids" attraction. *Id.* at *2. In granting summary judgment for the defendant, the court held, with respect to plaintiff's breach of warranty claim, that "[t]he right to enter an amusement park and the right to participate in its various rides and diversions are what the plaintiff purchased. This does not come within any of the definitions of 'goods' expressed above." *Id.*

This court can ascertain no material difference between the facts in this case with those present in *Dantzler.* Both plaintiffs purchased an admission ticket to ride the attractions in Sesame Place and allegedly suffered injuries while riding water attractions at the park. Likewise, this court agrees with the legal reasoning applied in *Dantzler*, in that the purchase of an admission ticket to an amusement park that enables a patron to ride attractions does not constitute a "good" pursuant to the UCC.[1] *See also Coppersmith v. Herco, Inc.*, 29 Pa. D. & C.4th 73, 81 (Pa.Com.Pl. 1996) (finding that plaintiff's ride in raft was "not the type of transaction with attributes similar to a sale of goods" and thus article 2 warranty provisions could not apply). Accordingly, Busch is entitled to judgment as a matter of law with respect to count II.

### B. *Count III—Strict Liability*

Busch next contends that it is entitled to summary judgment on plaintiff's strict liability claim. In count III of her complaint,

plaintiff claims that the "Sky Splash" was "designed, manufactured, distributed, leased, sold, and supplied for public use by Defendants Busch and Waterworld and was in a condition unreasonably dangerous to perspective users and consumers . . . ." Compl. ¶ 23.

Section 402A of the Restatement (Second) of Torts, which has been adopted by Pennsylvania with respect to claims of strict liability, *see Webb v. Zern*, 422 Pa. 424, 220 A.2d 853, 854 (1966), provides in relevant part:

> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for the physical harm thereby caused to the ultimate user or consumer or to his property, if
>
> > (a) The seller is engaged in the business of selling such a product, and
> >
> > (b) It is expected to and does reach the user or consumer without substantial changes in the condition in which it is sold.

Restatement (Second) of Torts § 402A. Busch argues that it cannot be held liable under section 402A because "it is not engaged in the business of selling a product, rather, it is in the business of proving amusement rides to its patrons." *See* Def.'s Mem. of Law in Support of its Mot. for Partial Summ. J. at 7 (citing *Malloy v. Doty Conveyor*, 820 F.Supp. 217, 220 (E.D.Pa.1993), for the proposition that "federal courts applying Pennsylvania law have made clear that strict products liability has not been expanded to include persons who provide only services").[2] Busch further argues that a consideration of the policy reasons behind imposing strict lia-

---

1. Moreover, based on this court's review, in her response to Busch's motion, plaintiff did not contest Busch's motion with respect to the breach of warranty claim. Indeed, plaintiff submitted no evidence, in the form of deposition testimony, affidavits, responses to interrogatories, or admissions, which could conceivably defeat summary judgment with respect to plaintiff's breach of warranty claim. In fact, only at oral argument did counsel for plaintiff inform the court that

plaintiff was still pursuing a breach of warranty claim, on the grounds that Busch was allegedly a "supplier" and therefore the ride was a "good." Based on the analysis above and the lack of any contrary evidence proffered by plaintiff, the court finds plaintiff's argument without merit.

2. Busch further contends that neither a lease nor a bailment was created between Sesame Place and plaintiff because at no time did

bility and the lack of evidence put forth by plaintiff dictate a finding in its favor.

■ In her response to Busch's motion, plaintiff argues that Busch "could be deemed a 'seller' or 'supplier' under section 402A" as interpreted by the Pennsylvania courts. *See* Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Partial Summ. J. at unnumbered p. 2. Plaintiff then argues that a balancing of the policy considerations behind the imposition of strict liability weigh in favor of imposing strict liability on Busch. *Id.* at unnumbered pp. 2–4.

■ The Pennsylvania Supreme Court has stated that "[t]he affixation of strict liability for damages caused by defective products to sellers of those products is based on policy which has as its purpose the protection of the public against the harms such defects engender." *Musser v. Vilsmeier Auction Co.,* 522 Pa. 367, 562 A.2d 279, 281 (1989). With that policy in mind, under Pennsylvania law, a "seller" pursuant to section 402A includes "anyone who, as a supplier, enters into the business of supplying the public with products, which may endanger them." *Id.* (citing *Francioni v. Gibsonia Truck Corp.,* 472 Pa. 362, 372 A.2d 736 (1977)). Nonetheless, this seemingly broad definition is not without limits. When the purposes of the policy "will not be served, persons whose implication in supplying products is tangential to that undertaking will not be subjected to strict liability for the harms caused by defects in the products." *Id.*

To assist lower state courts, and federal courts applying Pennsylvania law, that are faced with the decision whether to apply strict liability in a specific case, the Pennsylvania Supreme Court has stated that the following four factors should be considered:

(1) whether the defendant is the only member of the marketing chain available to the injured plaintiff for redress;

(2) whether the imposition of strict liability would serve as an incentive to safety;

(3) whether the defendant is in a better position than the consumer to prevent circulation of defective products; and

(4) whether the defendant can distribute the cost of compensating for injuries resulting from defects by charging for it in the business.

*Id.* at 373–74 (citing *Francioni* ); *see also Hipps v. Busch Entertainment Corp.,* No. CIV.A. 97–1907, 1997 WL 535181, at \*3 (E.D.Pa. July 31, 1997).

Thus, even assuming, based on an appropriate factual record, that Busch could be held to be a seller,[3] inexplicably, plaintiff has offered no evidence, whether by deposition testimony, affidavits, or admissions, on any of these factors. Consequently, this court is left with nothing but sheer speculation on which to base a finding that the extension of strict liability upon Busch is warranted in this case.[4] *See*

plaintiff obtain control or possession of the ride. *See* Def.'s Mem. of Law in Support of its Mot. for Partial Summ. J. at 9. Plaintiff does not offer any evidence, let alone argument, in support of that theory of liability, i.e., that a lease or bailment was created. Therefore, the court need not address Busch's contention.

**3.** Plaintiff bears the burden of proving that Busch is a "seller." *See Kriscuinas v. Union Underwear Co.,* No. CIV.A. 93–4216, 1994 WL 523046, at \*5 n. 6 ("[The plaintiff] is also required to prove that [the defendant] was a 'seller' of the Garment."); *Micciche v. Eastern Elevator Co.,* 435 Pa.Super. 219, 645 A.2d 278, 280 (1994) ("In addition, [the plaintiff] has failed to prove [the defendant] is a 'seller' for purposes of section 402A."). In fact, sev-

eral courts have concluded that an amusement park *could* be a seller for section 402A purposes under the appropriate circumstances, assuming a developed record. *See Hipps v. Busch Entertainment Corp.,* No. CIV.A. 97–1907, 1997 WL 535181 (E.D.Pa. July 31, 1997); *Coppersmith v. Herco, Inc.,* 29 Pa. D. & C.4th 73 (Pa.Com.Pl.1996); *Eljizi v. Dorney Park Coaster Co.,* 34 D. & C.4th 494 (Pa.Com.Pl.1996); *but see Eves v. S.P. Parks, Inc.,* No. CIV.A. 87–7776, 1988 WL 109107, at \*1 (E.D.Pa. Oct.17, 1988).

**4.** Indeed, during oral argument yesterday it was brought to the court's attention, without objection from plaintiff's counsel, that despite a discovery deadline of February 25, 2000, plaintiff has yet to serve any written discovery

*Cafazzo v. Central Med. Health Servs., Inc.*, 542 Pa. 526, 668 A.2d 521, 525 (1995) ("Thus, even assuming that providers of medical services could reasonably be termed sellers, in examining the test relied upon by [the plaintiffs] to 'prove' their [contention that the defendant is a seller] the policy reasons for strict liability are not present.").

As way of illustration, turning to the first factor, plaintiff argues, without referring this court to any evidence of record, that Busch is realistically the only member of the marketing chain available to plaintiff for redress. In other words, plaintiff is stating that recovery against defendant Waterworld is unlikely. During oral argument, however, plaintiff's counsel conceded that, in fact, plaintiff's chances of recovery against Waterworld are unknown at this point in time and offered no evidence regarding the prospects of recovering a money judgment against either Waterworld or Busch, for that matter.[5] Moreover, "[t]o assign liability for no reason other than the ability to pay damages is inconsistent with [Pennsylvania] jurisprudence." *Cafazzo*, 668 A.2d at 526.

> on Busch or depose any of its officers or employees. The court also notes that in response to Busch's motion, plaintiff did not submit an affidavit pursuant to Federal Rule of Procedure 56(f) requesting additional time for discovery and setting forth the specific discovery sought.

**5.** At oral argument, plaintiff's counsel informed the court that defendant Waterworld would soon be entering an appearance and, with plaintiff's consent, would be seeking to open the judgment entered against it. As of this date, however, no such appearance has been entered.

**6.** In her complaint, plaintiff alleged that defendant Busch was, "at all times relevant hereto ... in the business of manufacturing, designing, distributing, leasing, selling and supplying for public use amusement rides and attractions, including but not limited to, "Sky Splash"." *See* Compl. ¶ 7. As the non-moving party, however, plaintiff cannot rest on allegations contained in her pleadings to defeat summary judgment. *See* Fed.R.Civ.P. 56(e).

With respect to the second and third factors, plaintiff similarly has put forth no evidence of record demonstrating that Busch was involved in, or influenced in any way, the design or manufacturing of the "Sky Splash."[6] Nor has plaintiff offered any evidence of an ongoing relationship between defendants Busch and Waterworld from which Busch would have some leverage to insist that the rides be free from defect.[7]

Finally, it is undisputed that Busch charges park patrons an admission fee. Therefore, Busch could "conceivably" pass on the costs that the imposition of strict liability may have on it by raising that fee. The court finds, however, that this factor only marginally furthers the purposes of the policy behind strict liability. Again, the court cannot effectively weigh this "conceivability" argument against the other three factors because of plaintiff's complete failure to proffer any evidence concerning those factors.

Plaintiff cites two cases in support of her argument, cases that are distinguishable.[8] First, plaintiff cites *Hipps v. Busch Entertainment Corp.*, No. CIV.A. 97–1907, 1997 WL 535181 (E.D.Pa. July 31, 1997). In

**7.** For example, an effort at discovery by plaintiff potentially could have lead to evidence establishing that Busch purchases all, or even a substantial minority, of its rides from Waterworld. Unfortunately, plaintiff chose to forego discovery.

**8.** At oral argument, plaintiff's counsel also cited *Eljizi v. Dorney Park Coaster Co.*, 34 D. & C.4th 494 (Pa.Com.Pl.1996), in support of plaintiff's position. There, the court denied the defendant amusement park's motion for reconsideration of the court's previous denial of its motion for partial summary judgment on plaintiff's strict liability claim. After holding that the park "might be considered the supplier of a product which could endanger the public," the court stated, without any discussion as to the evidence it applied, that after considering the four factors, imposing strict liability on the park was appropriate. *Id.* at 500. Here, given the lack of evidence offered by the plaintiff on those factors, this court will not speculate.

that case, the court was faced with a motion to dismiss, involving the very same ride at issue here. *Id.* at *1. The court concluded that further development of the record with respect to the plaintiffs' section 402A claim was necessary to determine whether the plaintiffs had a fair chance of recovering from the alleged ride designer, whether the amusement park was in a position to influence the manufacturing and design of its amusement rides thereby being in a better position to prevent the circulation of defective amusement rides, and whether the park could distribute the cost of compensating injured persons by charging for it in the price of admission. *Id.* at *3–4. Accordingly, the court denied the park's motion to dismiss.

Second, plaintiff cites *Coppersmith v. Herco, Inc.,* 29 Pa. D. & C.4th 73 (Pa.Com. Pl.1996). There, the defendant park filed preliminary objections to the plaintiff's section 402A claim based on injuries she allegedly sustained in a similar water amusement. The court overruled the amusement park's preliminary objections because at that stage in the proceedings, the factual record relating to the four factors identified above was not fully developed. Thus, all doubts were resolved in the plaintiff's favor, and the court allowed the case to proceed on the section 402A claim. *Id.* at 78–79.

*Hipps* and *Coppersmith* both tested the sufficiency of the allegations in the respective complaints. Both courts allowed the cases to proceed so that a record on the *Musser* factors could be developed. Here, in contrast, plaintiff has had the opportunity through discovery to develop the record with respect to these four factors. Plaintiff, however, has not availed herself of that opportunity. Thus, the record is bare of any evidence that supports the extension of the doctrine of strict liability in this case. Accordingly, summary judgment in favor of defendant on count III is also warranted.

## IV. CONCLUSION

For the reasons set forth above, namely that plaintiff's purchase of an admission ticket to ride attractions at an amusement park is not a "good" and because plaintiff has failed to offer any evidence to justify affixing strict liability to Busch in this case, Busch's motion for partial summary judgment will be granted with respect to counts II and III of plaintiff's complaint.