Tabitha Lynn GOLT, a minor by her
next friend, Peggy GOLT, her
natural mother, Plaintiffs,

v.

SPORTS COMPLEX, INC., Defendant.

C.A. No. 90C–OC–42.

Superior Court of Delaware,
Kent County.

Submitted: Dec. 3, 1993.

Decided: March 31, 1994.

Gary F. Dalton and Mark F. Dunkle of
Prickett, Jones, Elliott, Kristol & Schnee,
Dover, for plaintiff.

David L. Baumberger, Gayle P. Lafferty, and Todd L. Goodman of Potter Anderson & Corroon, Wilmington, for defendant.

## MEMORANDUM OPINION

RIDGELY, President Judge.

This is an action brought by Tabitha L. Golt ("Plaintiff") against Sports Complex, Inc. ("Sports Complex") for injuries allegedly received as a result of a collision sustained while driving a go-cart provided by the Defendant. The complaint alleges the Defendant is liable under theories of negligence and strict liability. Sports Complex has moved for partial summary judgment, solely with respect to the strict liability claim, on the basis that the transaction is not a lease or bailment. This is the Court's decision on Sports Complex's motion for partial summary judgment.

### I. FACTS

At this stage, the facts must be viewed in the light most favorable to the nonmoving party. Sports Complex owns and operates a multi-attraction family amusement park offering a variety of rides and attractions including the Pacer 3000 go-cart attraction. Patrons of the park do not have to pay an admission fee to gain entry to the park, but must purchase tickets to participate in the rides.

The Pacer 3000 go-cart attraction consists of a track and go carts. One ticket allows a patron to drive around the track for one lap in a Pacer 3000 go-cart. If the patron wishes to continue after the first lap, the patron must stop and present another ticket. Attendants regulate when drivers begin their first lap, the direction of go-cart traffic, and go-cart speed. The attendants also enforce the track rules, including a prohibition on bumping or cutting off, by ejecting drivers who engage in these activities.

On July 27, 1990, the Plaintiff purchased and used tickets to drive a Pacer 3000 go-cart. On her second lap, the Plaintiff had traveled a short distance when another go-cart ran into the Plaintiff's go cart from behind. Plaintiff allegedly suffered severe injuries to her eye and head.

Plaintiff's strict liability claim alleges the Pacer 3000 go-cart is defective as compared to other go carts currently used in the industry. Specifically, the Plaintiff alleges the Pacer 3000 inadequately absorbs the energy of a rear-end collision because the cart is constructed with rigid fiberglass, and the head restraint inadequately protects the driver's neck in a rear-end collision.

## II. CONTENTIONS OF THE PARTIES

Defendant argues strict liability for design defects should not apply to this transaction. Defendant contends the Plaintiff's purchase of a ticket and the exchanging of the ticket for the go-cart is not a lease or bailment transaction. Instead, Defendant suggests the proper theory of liability is simple negligence, which will protect the rights of the injured party.

Plaintiff contends strict liability should apply to the non-sales transaction arising out of the Defendant's go-cart operation. Plaintiff argues the transfer of possession and control in the go-cart existed and constitutes a bailment, and the Delaware Supreme Court has already applied strict liability to bailment transactions. Plaintiff also argues the public policy goals of strict liability are served by the application of strict liability in this situation.

## III. LEGAL STANDARD FOR SUMMARY JUDGMENT

◼ A motion for summary judgment requires the Court to examine the record to determine whether any genuine issues of material fact exist. *Burkhart v. Davies,* Del. Supr., 602 A.2d 56, 59 (1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1946, 118 L.Ed.2d 551 (1992). If, after viewing the record in the light most favorable to the nonmoving party, the Court finds no genuine issue of material fact, summary judgment is appropriate. *Hammond v. Colt Ind. Operating Corp.,* Del.Super., 565 A.2d 558, 560 (1989). However, summary judgment may not be granted when the record indicates a material fact is in dispute or if it seems desirable to inquire more thoroughly into the

facts in order to clarify the application of law to the circumstances. *Wilson v. Dover Skating Center, Ltd.*, Del.Super., 566 A.2d 1020 (1989).

## IV. ANALYSIS

Two issues are presented in this motion for summary judgment: (1) whether strict liability, applied to a bailment transaction, includes liability for design defects; and, if so, (2) whether strict liability applies to a transaction involving purchasing a ticket and using the ticket to gain access to a go-cart.[1]

### A. Strict Liability Imposed in Bailment Transactions Includes Liability for Design Defects

■ Strict liability in tort was originally developed to allow recovery against remote manufacturers. *Martin v. Ryder Truck Rental, Inc.*, Del.Supr., 353 A.2d 581, 586 (1976). Strict liability insured "that the costs of injuries resulting from defective products are borne by the manufacturers that put such products on the market rather than by the injured persons who are powerless to protect themselves." *Martin*, 353 A.2d at 585 (citing *Greenman v. Yuba Power Products, Inc.*, Cal.Supr., 59 Cal.2d 57, 27 Cal. Rptr. 697, 377 P.2d 897, 900–01 (1963)). Since *Yuba Power*, the doctrine has been in a constant state of extension and refinement. *Martin*, 353 A.2d at 586.

■ Clearly, the rule of law concerning the application of strict liability to sellers, dealers, wholesalers, and retailers for design defects is well settled. *See Vandermark v. Ford Motor Co.*, Cal.Supr., 61 Cal.2d 256, 37 Cal.Rptr. 896, 391 P.2d 168, 171–72 (1964); *Musser v. Vilsmeier Auction Co.*, Pa.Supr., 522 Pa. 367, 562 A.2d 279, 281 (1989); Restatement (Second) of Torts § 402A (1965); W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 101, at 705, 706–07 (5th ed. 1984) (hereinafter "Prosser on Torts"); *see also Cline v. Prowler Indus. of Maryland, Inc.*, Del.Supr., 418 A.2d 968, 972 (1980); *Torres v. Goodyear Tire & Rubber Co.*, Ariz.Supr., 163 Ariz. 88, 786 P.2d 939, 942 (1990); *Owens–Illinois v. Zenobia*, Md. Supr., 325 Md. 420, 601 A.2d 633, 639 (1992); *Nelson by Hibbard v. Nelson Hardware*, Wis.Supr., 160 Wis.2d 689, 467 N.W.2d 518, 523–24 (1991); 63 Am.Jur.2d, *Products Liability*, § 572 at 816 (1984). The court in *Musser* states the basic rationale for this rule:

> The basis of the rule is the ancient one of the special responsibility for the safety of the public undertaken by one who enters into the business of supplying human beings with products which may endanger the safety of their persons and property, and the forced reliance upon that undertaking on the party of those who purchase such goods.

*Musser*, 562 A.2d at 281 (citing Restatement (Second) of Torts § 402A cmt. f). Furthermore, sellers are "an integral part of the overall producing and marketing enterprise that should bear the cost of injuries resulting from defective products." *Vandermark v. Ford Motor Co.*, 391 P.2d at 171. Prosser and Keeton add a final rationale for applying strict liability to a retailer:

> Such liability will induce care in the selection of manufacturers who are responsible both in (a) designing and constructing safe products, and (b) in providing financial security for those victimized by dangerously defective products.

Prosser on Torts, § 101, at 707.

■ The Delaware Supreme Court has determined strict liability in tort applies to bailment and lease transactions. *Martin*, Del.Supr., 353 A.2d 581, 586–87; *see also*

---

1. The Court notes a potential issue concerning the preemption of common law strict liability by the recent adoption of Article 2A of the Uniform Commercial Code pertaining to leases of goods. In *Cline v. Prowler Indus. of Maryland, Inc.*, Del.Supr., 418 A.2d 968 (1980), the Delaware Supreme Court ruled "it is not within the power of the Court to adopt the doctrine of strict tort liability in sales cases due to the preemence of the Uniform Commercial Code in the sales field of the law." *Id.* at 980. In this case, the transaction and collision took place on June 27, 1990, almost a full two years before Article 2A took effect. Article 2A only applies to a lease agreement made, or that first becomes effective, after Article 2A took effect on June 19, 1992. *See* 6 *Del.C.* 2A Revisor's Note; 68 *Del.Laws* 249 § 6 (1992). Because Article 2A does not apply to the present transaction, any preemption issue concerning leases need not be addressed today.

*Wilson v. Dover Skating Center, Ltd.*, Del.Super., 566 A.2d 1020, 1022 (1989). The reasoning concerning the application of strict liability to sellers is equally applicable regarding the application of strict liability to lessors or bailors of personal property. *Martin*, 353 A.2d at 586–87 (citing *Price v. Shell Oil Co.*, Cal.Supr., 2 Cal.3d 245, 85 Cal.Rptr. 178, 466 P.2d 722, 725–26 (1965)); *accord Francioni v. Gibsonia Truck Corp.*, Pa.Supr., 472 Pa. 362, 372 A.2d 736, 739–40 (1977). Since the public policy reasons for holding sellers strictly liable for design defects and holding lessors and bailors liable for design defects are congruous, the doctrine of strict liability for design defects applies to both bailors and lessors of personal property.

### B. Strict Liability Applies To This Transaction

#### · 1. This Transaction is a Bailment

As stated above, strict liability applies to bailment and lease transactions. *Martin*, Del.Supr., 353 A.2d at 586–87.[2] Therefore, if the relationship between the Defendant and the Plaintiff is a bailment, strict liability will apply.[3] *See Sage v. James Julian, Inc.*, Del.Super., C.A. No. 87C–NO–180, 1990 WL 140076 Babiarz, J. (Sept 13, 1990) Mem. Op. at 3.

■ A bailment arises when one party delivers property to another for some purpose after which the property will be returned to the original party. *See Lee Tire & Rubber Co. of the State of N.Y. v. Dormer*, Del.Supr., 48 Del. 578, 108 A.2d 168, 170–71 (1954); *Sage, supra*, at 3. A bailment occurs when one party retains legal title to a chattel but control and possession of the property is transferred to the bailee. *See Lee Tire*, 108

A.2d at 170; *Sage, supra*, at 3. As long as the bailee uses the chattel for the intended purposes of the bailment, the bailor cannot retake possession of the chattel without the bailee's consent. 8 Am.Jur.2d *Bailments* § 79 (1980).

Sports Complex argues the requisite transfer of possession and control did not occur with respect to the go-cart. It relies upon several facts to support its contention. At all times, the employees supervised the facilities and controlled the conduct of the drivers on the half-mile track. This supervision included starting the drivers at the same time, ensuring that all drivers were going one direction, and enforcing track rules. The employees also required the drivers to stop after one lap and either exit the vehicle or give another ticket to continue on the track. Any drivers not complying with the rules were ejected.

■ I disagree with the Defendant's contention that transfer of possession and control did not occur. The undisputed facts show the transaction constitutes a bailment. At the beginning of the "race," the attendant only takes the patron's ticket and explains the location of the brakes and the accelerator, and then warns "no bumping allowed" before the driver is allowed on the track. Once the driver begins to drive the go-cart, Sports Complex does not have a mechanism to stop a go-cart to retake possession. The co-owner of Sports Complex even explained that it relied on the patrons to properly control their go-carts on the wide open track. (Townsend Deposition at 28–29.) Clearly, the patrons had possession and control of the go-cart for at least one lap. Thus, the necessary transfer of possession and control of the go-cart existed to create a bailment.

**2.** Defendant claims the holding in *Martin* only applies to "lease" and "bailment-lease" transactions, and not to "bailments." "The terms 'bailment' and 'lease' are often used synonymously and both require a transfer of possession and control to the holder of the property." *Sage v. James Julian, Inc.*, Del.Super., C.A. No. 87C–NO–180, 1990 WL 140076 Babiarz, J. (Sept. 13, 1990) Mem.Op. at 3. Even the court in *Martin* used the terms interchangeably. *See Martin* at 586 ("One of the extensions of the doctrine has been to bailors and lessors"). Furthermore, this Court has interpreted *Martin* as not being con-

strained to its facts. *Wilson v. Dover Skating Center, Ltd.*, Del.Super., 566 A.2d 1020, 1022 (1989). Thus, the holding of *Martin* applies to bailments, leases and bailment-lease transactions.

**3.** The parties do not contend the transaction constitutes a lease. I will not speculate whether the transaction constitutes a lease as defined by Article 2A of the Uniform Commercial Code. *See* 6 *Del.C.* § 2A–103(j) (defining a lease as a "right to possession and use of goods for a term in return for consideration").

The restrictions pointed to by Sports Complex are merely limitations on the bailment's purpose. The verbal and written rules of the track restrict the use of the go-cart to driving around the track in a non-threatening manner. One ticket limits the rider to one lap around the track. Sports Complex has the right to retake possession of the go-cart and end the bailment relationship if a driver uses the go-cart beyond the purposes of the bailment, but this fact does not mean a bailment does not exist. Indeed, many of these restrictions apply to every motor vehicle on a public highway.

## 2. The Essence Of This Transaction Is Not The Selling Of A Service

Defendant relies upon *Siciliano v. Capital City Shows,* N.H.Supr., 124 N.H. 719, 475 A.2d 19 (1984), for the principle that strict liability should not apply in this case. In *Siciliano,* parents brought negligence and strict liability claims against an amusement ride operator for the injuries and death of two minor children caused by the malfunctioning of the amusement ride. *Id.* 475 A.2d at 20. Under New Hampshire law, strict liability does not apply to a "supplier of services." *Id.* 475 A.2d at 25. The Court held strict liability did not apply because the ride operator merely provided a service, namely, a ride on a machine, to the passenger of the ride. *Id.*

■■■■ Delaware recognizes the service/product distinction, imposing no liability on the provider of services, absent a showing of negligence. *Castaldo v. Pittsburgh–Des Moines Steel Co.,* Del.Supr., 376 A.2d 88, 91 (1977); *see also Cropper v. Rego Distribution Center, Inc.,* D.Del., 542 F.Supp. 1142, 1148 (1982). The Third Circuit has explained the reason for the distinction:

> Professional services do not ordinarily lend themselves to [strict liability] because they lack the elements which gave rise to the doctrine. There is no mass production of goods or a large body of distant consumers whom it would be unfair to require to trace the article they used along the channels of trade to the original manufacturer and there to pin-point an act of negligence

remote from their knowledge and even from their ability to inquire.

*LaRossa v. Scientific Design Co.,* 3d Cir., 402 F.2d 937, 942 (1968) (applying New Jersey law). This Court has extended the service/product distinction to the rendering of a service with a product incidentally involved. *Young v. Delaware Authority for Regional Transit,* Del.Super., C.A. No. 78C–JL–87, Bifferato, J. (Sept. 25, 1980) Letter Op. at 4–6 (refusing to impose strict liability on a common passenger carrier).

This Court has framed the service/product distinction analysis by posing this question: "Is [the case at bar] ... a transaction analogous to the sale of a product as found in [*Martin*]?" *Young, supra,* at 4. The essence of the *Martin* transaction was the lease of a product, the truck. *Young, supra,* at 4.

In the case at bar, the essence of the transaction focused on the transfer of possession and control of the go cart, which is similar to the transaction in *Martin.* Sports Complex gave possession of a go cart to the Plaintiff in return for a ticket, purchased by the Plaintiff. The Plaintiff took control of the go cart and drove it around the go cart track. The track was a half-mile long, and the Plaintiff controlled the go cart as she pleased, including the steering, accelerator and brake, subject to the rules of the complex. As this Court stated above, the transaction constituted a bailment. The Court holds the gaining of possession of a go-cart, by giving a ticket purchased by the Plaintiff, primarily involves a product and not supplying a service. Thus, the Plaintiff is not barred from using strict liability as a theory of recovery.

## 3. Public Policy Considerations Mandate The Imposition of Strict Liability

I am further convinced the application of strict liability to this transaction is appropriate when viewed in light of public policy arguments advanced to support the doctrine of strict liability. The Delaware Supreme Court enunciated the public policy rationales underlying the expansion of strict liability to bailments and leases:

(1) the concept that the cost of compensating for injuries and damages arising from the use of a defective motor vehicle should be borne by the party who placed it in circulation, who is best able to prevent distribution of a defective product, and who can spread the cost as a risk and expense of the business enterprise; (2) the concept that the defective motor vehicle was placed on the highways in violation of a representation of fitness by the lessor implied by law from the circumstances and trade practices of the business; and (3) the concept that the imposition upon the lessor of liability without fault will result in general risk-reduction by arousing in the lessor an additional impetus to furnish safer vehicles.

*Martin,* 353 A.2d at 587; *see also Wilson,* 566 A.2d at 1022, 1024.

All of these considerations are applicable in the present case. The cost of supplying a defective go-cart should be imposed on the party profiting from the public's use of the go-cart. The owner of the go-cart can best spread the risk of injury through the prices of tickets. From the very nature of the go-cart transaction, the owner implies a representation that the go-cart is fit to travel around the track and adequately absorb the energy created from a collision of two go-carts. Placing liability on the owner will also ensure the go-cart owner will take care in selecting responsible manufacturers who design and construct safe go-carts, resulting in general risk-reduction.

## V. CONCLUSION

Strict liability in tort, as applied to lessors and bailors, includes the liability resulting from latent design defects. Buying an amusement ticket and using the ticket to gain control and possession of a go-cart creates a bailment. This transaction is not a service. Since strict liability applies to bailments, and because this transaction is a bailment, strict liability applies to this transaction. Consequently, Sports Complex's motion for partial summary judgment is **DENIED.**

An order will be entered consistent with this opinion.

## ORDER

This 31st day of March, 1994, the Court having issued its memorandum opinion this date, and for the reasons assigned therein,

IT IS ORDERED that:

The Motion of Defendant Sports Complex, Inc., for Partial Summary Judgment with respect to Plaintiff's strict liability claim is **DENIED.**