Richard GRAY and Brenda
Gray, Plaintiffs,

v.

SNOW KING RESORT, INC., a Wyoming
Corporation, d/b/a The Alpine Slide;
Mannesmann Demag Fordertechnik of
West Germany; John Does I through V;
and Black Corporations I through V, a
Wyoming Corporation, and Wyoming
Slide Corporation, a Wyoming Corpora-
tion, Defendants.

No. 94–CV–0024–B.

United States District Court,
D. Wyoming.

June 27, 1995.

William R. Fix, Jackson, WY, for plaintiffs.

Timothy J. Bommer, Jackson, WY, for defendant Mannesmann Demag Fordertechnik.

Hampton K. O'Neill, W. Henry Coombs, III, Casper, WY, for defendant Snow King Resort, Inc.

### *ORDER ON MOTION TO DISMISS AND MOTIONS FOR SUMMARY JUDGMENT*

BRIMMER, District Judge.

This matter comes before the Court on Defendant Mannesmann Demag Fordertechnik's (hereinafter "Demag") Motion to Dismiss and on both defendants' Motions for Summary Judgment, and the plaintiff's oppositions thereto. The Court, having considered the materials on file and having heard the arguments of the parties, FINDS and ORDERS as follows:

#### *Background*

In this action, Plaintiff Richard Gray seeks to recover damages for personal injuries he allegedly suffered while using a sled at the Snow King Resort in Jackson, Wyoming. The complaint, which names the operator of the resort (Snow King), as well as the German manufacturer of the sled (Demag), alleges negligence, breach of implied warranty, strict liability, and loss of consortium.

On August 14, 1993, Richard Gray was in Jackson, Wyoming, where he purchased tickets for an amusement ride known as the "Alpine Slide," an attraction owned and operated by Defendant Snow King. The ride involved navigating a wheeled bob-sled down a winding trough-shaped slide built of fiber reinforced concrete. Plaintiff Gray alleges that when he arrived at the top of the Alpine Slide, Snow King personnel directed him to select a sled from a supply maintained by Snow King. The sled's downhill speed was controlled by a brake lever, but Gray alleges that he was never given adequate instructions on how to keep the sled at a safe speed. Gray alleges that as he began to go down the slide, his sled gathered momentum, hit a dip in the slide, and launched into the air. Gray alleges that the force of the landing caused him to suffer debilitating back injuries.

In addition to suing Snow King and Demag, Gray also sues Inventex, the distributor of the slide. Gray has obtained a default judgment against Inventex, but informs the Court that the company no longer exists, has no insurance, and has many other default judgments against it. As for Defendants Demag and Snow King, both have filed motions for summary judgment, to which Gray has responded. Demag has also filed a Motion to Dismiss for Lack of Personal Jurisdiction. The Court begins with the Motion to Dismiss.

## Discussion

### DEMAG'S MOTION TO DISMISS

Gray filed his complaint against Demag on February 3, 1994. Demag filed its answer on September 6, 1994. Demag's answer made no mention of this Court's alleged lack of personal jurisdiction as a defense. On March 22, 1995, Demag filed a Motion to Amend its Answer to include the defense of lack of personal jurisdiction.

A defect in a district court's jurisdiction over a party is a personal defense which may be asserted or waived by a party. *Williams v. Life Sav. and Loan,* 802 F.2d 1200, 1202 (10th Cir.1986). Objections to personal jurisdiction must be asserted in the answer or a pre-answer motion. Fed. R.Civ.P. 12(b), *Federal Deposit Ins. Corp. v. Oaklawn Apartments,* 959 F.2d 170, 175 (10th Cir.1992). If a party fails to assert the defense of lack of personal jurisdiction in its answer or pre-answer motion, it waives the defense. *Id.,* Fed.R.Civ.P. 12(h)(1). An exception to this rule allows a party to amend a pleading to include the defense of lack of personal jurisdiction where such amendment would be permitted *as a matter of course* under Fed.R.Civ.P. 15(a). Fed.R.Civ.P. 12(h)(1)(B). An amendment of a pleading is allowed as a matter of course at any time before a responsive pleading is served, or where no responsive pleadings are permitted and where the action has not been placed on the trial calendar, at any time within 20 days after the underlying pleading is served. Fed.R.Civ.P. 15(a).

Here, no dispute exists that Demag failed to raise the defense of lack of personal jurisdiction in its original answer, and did not seek to amend its answer to include the defense until over six months later. The Court observes that the Federal Rules of Civil Procedure are sufficiently clear to put a party on unmistakable notice that a failure to raise the defense of lack of personal jurisdiction constitutes a waiver of the right to later present such a defense. Because Demag failed to assert its defense in accordance with the Federal Rules of Civil Procedure, this Court has no choice but to consider the defense waived. Demag's Motion to Dismiss must accordingly be DENIED.

## Standard for Review

### MOTIONS FOR SUMMARY JUDGMENT

This Court grants summary judgment only when the material facts surrounding a particular claim are sufficiently clear to obviate the need for a trial. Because summary judgment is an extraordinarily powerful declaration based primarily on motion rather than the live presentation of testimony and other evidence, this Court must apply an extra measure of caution in scrutinizing the parties' contentions for an absence of genuine dispute as to the material facts of a claim or contention. The hurdle of summary judgment is further elevated by the require-

ment that a court examine all evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Moya v. United States*, 35 F.3d 501, 502–03 (10th Cir.1994).

The specific standards for summary judgment are well recognized, and need only be briefly restated. "By its very terms, [the Rule 56(c)] standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there is no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original). An issue of material fact is "genuine" if a "reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510. The trial court decides which facts are material as a matter of law. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.;* see also, *Moya v. United States*, 35 F.3d 501 (10th Cir.1994).

## DEMAG'S MOTION FOR SUMMARY JUDGMENT

The basis of Demag's motion is that because it had no part of the design, construction or installation of the Alpine Slide, it cannot be liable for Mr. Gray's injuries. The Court finds that Demag's argument distorts the basis of Gray's position and completely ignores Gray's legitimate contention that it was not only the slide which caused the injury, but the sled as well. Indeed, it is quite possible, based on the facts presented, that the sled was the primary cause of the alleged accident. Additionally, Demag now concedes that a number of its sleds may have been in use by Snow King at the time the incident occurred. Based on the above, the Court finds that genuine questions of material fact exist not only as to whether a sled manufactured by Demag was involved in the incident, but also whether or how the sled contributed to Gray's alleged injuries. Genuine dispute also exists as to the design and

maintenance of the sleds and the presence and/or sufficiency of warning labels. Demag's Motion for Summary Judgment must therefore be DENIED.

## SNOW KING'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Snow King argues that Gray's claims for breach of warranty and strict product liability are inapplicable, since Snow King never manufactured, distributed or sold either the Alpine Slide or the sleds. Snow King contends that because it simply maintained the equipment, the only theory of recovery which may be maintained is a claim for negligence.

Gray responds that while Snow King did not manufacture or sell the Alpine Slide and sleds, its furnishing of the sled to Mr. Gray constituted a bailment which, under Wyoming law, supports a cause of action for strict product liability and breach of implied warranty. Snow King, in turn, has filed a reply to Gray's opposition, arguing that no bailment was created, and even if one was, Wyoming law allows neither strict liability nor breach of warranty as theories of recovery for injuries resulting from creation of a bailment.

The question thus presented is twofold: first, was a bailment created when Snow King gave Gray the sled for the purpose of descending the Alpine slide? If so, under Wyoming law may an action for breach of implied warranty and/or strict product liability be founded upon the creation of a bailment? The Court will address these questions seriatim.

### Creation of a Bailment

A bailment constitutes the delivery of property by one person (the bailor) to another (the bailee) in trust for a specific purpose, with an express or implied contract that the property will be returned or duly accounted for when the special purpose is accomplished. 8 Am.Jur.2d *Bailments* § 2 (1980). In a bailment, the bailor transfers possession of property, but retains title. Black's Law Dictionary 180 (4th ed. 1968). The difference between a sale and a bailment is that the identical property given is to be returned; if another thing of equal value is to

be returned the transaction is a sale. *Id.* A bailment is considered a "bailment for mutual benefit" where both of the parties to the contract receive some form of benefit. Generally, in order to create a bailment for mutual benefit, the bailor must receive compensation or some benefit from the loan of the chattel. *Waggoner v. General Motors Corp.,* 771 P.2d 1195, 1199 (Wyo.1989) Examples of specific bailments recognized in Wyoming are found in *Quality Acceptance Corp. v. Million and Albers, Inc.,* 367 F.Supp. 771 (D.Wyo.1973) (leasing of business machinery); *Waggoner v. General Motors Corp.,* 771 P.2d 1195 (Wyo.1989) (rental of an automobile); *Woodburn Brothers v. Erickson,* 230 F.2d 240 (10th Cir.1956) (pasturing of cattle); and *Arnold v. Gibson,* 447 P.2d 166 (Wyo.1968) (rental of dirt moving equipment).

■ After examining the facts before it, this Court has little difficulty concluding that the transaction in the instant case constituted a bailment. Snow King, as bailor, transferred possession of the sled to Gray for the specific purpose of descending the Alpine Slide. Clearly, at least an implied agreement existed that when Gray reached the bottom of the slide, having accomplished the specific purpose for which the sled was entrusted to him, he would return the sled to Snow King. Had Gray attempted to leave the property with the sled or otherwise refused to return it, he would have been liable for conversion, and had he destroyed the sled through his own negligence, he would have been liable for its replacement. The Court also finds that the bailment in this case was a bailment for mutual benefit; Snow King benefited from the sale of tickets, and Gray as a patron presumably sought benefit from the amusement of the ride.

The Court rejects Snow King's argument that Mr. Gray's purchase of a ticket to ride the Alpine Slide created a mere license. Had the Alpine Slide been a roller coaster or a ferris wheel, where control of speed, direction and operation was under the complete control of Snow King, the license argument would be more persuasive. Here, however, Gray took possession and control of the bobsled and the accompanying control of its direction and speed. The events in this case are more analogous to the lease or bailment of a rental car than the purchase of a license to attend a movie.

This conclusion is supported by *Golt v. Sports Complex, Inc.,* 644 A.2d 989 (Del.Super.Ct.1994), a case remarkably applicable to the facts of this case. In *Golt,* the plaintiff sued after she was struck from behind while driving the defendant's go-cart on a track owned and operated by the defendant. The defendant argued against creation of a bailment, contending that because of extensive supervision of customers as they used the go-carts, no transfer of possession and control occurred. The court disagreed:

> The undisputed facts show the transaction constitutes a bailment. At the beginning of the "race," the attendant only takes the patron's ticket and explains the location of the brakes and the accelerator, then warns "no bumping allowed" before the driver is allowed on the track. Once the driver begins to drive the go-cart, Sports Complex does not have a mechanism to stop a go-cart or to retake possession. The co-owner of Sports Complex even explained that it relied on the patrons to properly control their go-carts on the wide open track. Clearly, the patrons had possession and control of the go-cart for at least one lap. Thus the necessary transfer of possession and control of the go-cart existed to create a bailment.

*Id.* at 992.

The Court agrees with this assessment, and finds its reasoning to be equally applicable to the case at bar. The Court concludes that the transfer of the sled created a bailment with Snow King as the bailor and Gray as the bailee. The Court now turns to a discussion of the creation of implied warranties and the applicability of strict liability.

*Implied Warranty*

A recent Wyoming case dealing with the law of bailments in the context of implied warranties is *Waggoner v. General Motors Corp.,* 771 P.2d 1195 (Wyo.1989). In *Waggoner,* the defendant automobile dealer lent the plaintiff a Jeep while the dealer serviced his truck. Several days later, and after complaining about the brakes on the loaned car,

another driver broadsided the plaintiff in an intersection, causing him injury. The driver of the other vehicle was cited, but was not named a party to the suit. Plaintiff sued both General Motors and the dealer, alleging strict liability, breach of warranty, and negligence. The state district court granted summary judgment in favor of the defendants on the strict liability and warranty claims, and the jury returned a verdict in favor of the defendants on the issue of negligence. Plaintiff then appealed.

On appeal, the Wyoming Supreme Court had occasion to discuss the difference between a gratuitous bailment and a bailment for mutual benefit. In addressing the bailment for mutual benefit, the court stated:

> A bailment for mutual benefit arises when both of the parties to the contract receive a benefit. Generally, the bailor must receive compensation or some benefit from the loan of the chattel ... If the bailment is for the mutual benefit of the parties, such as a bailment for hire, the duty of care owed by the bailor is greater than in a gratuitous bailment. The bailor, in such situation, must perform a reasonable inspection before transfer to determine if the chattel is fit for the purpose intended and warn of defects discoverable with reasonable care to make the article safe for its intended purpose.

*Id.* at 1199 (citations omitted).

The Wyoming Supreme Court also cited a jury instruction which the plaintiff-appellant submitted but which the district court refused to give. This instruction read, in part:

> if bailment is for the mutual benefit of both bailor and bailee, such as a let for hire agreement, then the general rule is that while the bailor is not an absolute insurer against the injuries from the defective chattel he is charged with duty of inspection to determine whether or not chattel is fit for purpose intended, and thus if defect was discoverable he becomes liable for injuries to bailee arising from the unsafe condition on theory of implied warranty of fitness.

*Id.* at 1199.

The court then stated that "[t]he instructions offered by appellant are accurate statements of the law." *Id.*

Unfortunately, the Wyoming Supreme Court did not elaborate further on the questions of the applicability of implied warranty and strict liability. Instead, the court noted that these issues presented a question of first impression in Wyoming but found that it need not reach them for the purposes of the case:

> In granting summary judgment on the strict liability claims, the district court found that strict liability was applicable to lease transactions but that assumption of the risk was a complete and absolute defense to a cause of action premised on strict liability and that appellant's admitted knowledge of the alleged defect was sufficient to establish assumption of the risk. Regarding the implied warranties, the district court found that the warranties only attach to a "sale" transaction and they, therefore, were inapplicable to the non-sale transaction involved in this case.
>
> These determinations by the district court raise a number of issues of first impression in Wyoming ... we are not necessarily convinced that the district court properly resolved all of these issues. We conclude, however, that we need not reach them in this case and that the summary judgment should be affirmed because the findings regarding proximate cause made by the jury in the negligence action collaterally estop appellant from re-litigating the critical question of fact, common to all appellant's theories of recovery, in a subsequent proceeding.

*Id.* at 1202. Thus, *Waggoner* is of limited use to the instant question, but confirms, as mentioned in the proposed instruction approved by the Wyoming Supreme Court (and despite the district court's earlier ruling to the contrary), that a bailment for hire creates a warranty of fitness for a particular purpose where defects complained of are discoverable. *Waggoner* may also indicate, to the extent that the Supreme Court agrees with the district court's holding, that strict liability applies to bailments.

Another instructive case on the question of the creation of implied warranties

in the context of bailments is *Quality Acceptance Corp. v. Million and Albers, Inc.,* 367 F.Supp. 771 (D.Wyo.1973). In *Quality Acceptance,* plaintiff leasing company sued the defendants after they failed to pay lease fees on office equipment. Defendants refused to pay the lease fees on grounds that the equipment was defective, arguing that the plaintiffs should be foreclosed from recovery because of a breach of the warranties of merchantability and fitness.

The first question which confronted the court was "whether any warranties arise … as this is not a sale and there is no passing of title." The court concluded:

> Courts and authorities have held that in this day of expanding leasing and rental enterprises, the mere fact that a person leases, rather than purchases, should not deny him the protection the law affords. *There is no reason why such warranties should not be implied as a matter of law in this case whether it be deemed a lease or a bailment agreement,* especially as the mercantile probabilities are the lease will end, or would have, in the purchase by the defendant.

*Id.* at 773 (emphasis added). Thus, in *Quality Acceptance* this Court concluded that implied warranties apply to bailment agreements, despite the fact that no title changes hands.[1] The Court therefore finds that the combined weight of *Waggoner* and *Quality Acceptance* establish that the implied warranty of fitness attaches to bailments for mutual benefit.

*Strict Liability*

■ As to the specific question of the applicability of strict liability to bailments, with the exception of the district court's holding in *Waggoner, supra,* the Wyoming courts appear to be silent. However, a careful reading of *Quality Acceptance Corp. v. Million and Albers, Inc.,* 367 F.Supp. 771 (1973) convinces this Court that strict liability should apply not only to the sale of products but to the bailment of those products as well; *Quality Acceptance* held that "the mere fact

that a person leases, rather than purchases, should not deny him the protection the law affords." *Id.* at 773. Clearly, the law of strict liability in product liability cases provides substantial legal protection to the victims of defective products. This Court cannot identify a legitimate reason why a person injured by a defective product should be deprived of that protection simply because he was the bailee for mutual benefit, and not the purchaser, of a product. Certainly, whether leased or bailed for mutual benefit, the purveyor of the product in question benefits from the transaction much as he would from a sale. This Court accordingly holds that, consistent with the underlying concept of strict liability, compensation for injuries arising from the use of a defective product should most justly be born by the party who profits from the placement of that product into the hands of the consumer. In this case, Snow King, as bailor of the sled, should rightly be held answerable to Gray's accusations that such sled was defective. Moreover, assigning accountability in this fashion will encourage companies like Snow King to use care in selecting the products which they bail to the public for profit.

■ The Court's holding is by no means extraordinary or without precedent. Indeed, it is consistent with other jurisdictions which have discussed the issue and found, more often than not, that strict liability attaches in cases of short term or "one-shot" leases. *See* Allan E. Korpella, *Products Liability: Application of Strict Liability in Tort Doctrine to Lessor of Personal Property,* 52 ALR 3d 121 § 6[a] (1973). For example, in *Stewart v. Budget Rent–A–Car Corp.,* 52 Haw. 71, 470 P.2d 240 (1970), the plaintiff was injured when she lost control of her defective rental car. In finding in favor of strict liability, the court stated:

> we adopt the rule that one who sells or leases a defective product which is dangerous to the user or consumer or to his property is subject to liability for physical harm caused by the defective product to

---

1. It is important to note, however, that *Quality Acceptance* placed considerable emphasis on the fact that the lease in question contemplated the eventual purchase of the chattels in question.

Such reasoning, to the extent it relies on the fact that the eventual purchase of the bailed object was contemplated, is inapplicable to the sled in the instant case.

the ultimate user or consumer, or to his property, if (a) the seller or lessor is engaged in the business of selling or leasing such product, and (b) the product is expected to and does reach the consumer without substantial change in its condition after it is sold or leased.

*Id.* 470 P.2d at 243.

Here, Snow King was engaged in the business of providing sleds to patrons so they could descend the slide. There also appears to be no dispute that no substantial change occurred in the condition of the sled between the time it was bailed to Gray and the time he was allegedly injured.

Based on the above, the Court concludes that both the implied warranty of fitness and the doctrine of strict liability apply in cases of bailments for mutual benefit. Snow King's Motion for Summary Judgment on these issues must therefore be denied.

THEREFORE, it is

ORDERED that Defendant Demag's Motion to Dismiss and Motion for Summary Judgment be, and the same hereby are, **DENIED.** It is further

ORDERED that Defendant Snow King's Motion for summary judgment be, and the same hereby is, **DENIED.**